1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                         **EASTERN DIVISION**

11

12  ANTONIO ZALAZAR,                    )        No. EDCV 06-1248 (CW)
                                        )
13                  Plaintiff,          )        DECISION AND ORDER
             v.                         )
14                                      )
    MICHAEL J. ASTRUE,                  )
15  Commissioner, Social Security )
    Administration,                     )
16                                      )
                    Defendant.          )
17  _____)

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  As

22  discussed below, the court finds that the Commissioner's decision

23  should be reversed and this matter remanded for payment of benefits

24  for the period between May 17, 1997, to March 21, 2000.

25                        **I.    BACKGROUND**

26       Plaintiff Antonio Zalazar was born on June 12, 1948, and was

27  fifty-one years old during the period relevant to his Disability

28  Insurance Benefits ("DIB") claim. [Administrative Record ("AR"), 152.]

                                    1

He has a fifth grade education in Mexico and past relevant work
experience as a machinist and cook. [AR 43, 223.]  Plaintiff alleges
disability on the basis of lower back pain, beginning on September 9,
1994. [AR 222.]  On March 22, 2000, plaintiff resumed substantial
gainful activity as a machine operator. [AR 21.]  Plaintiff seeks a
closed period of disability from September 9, 1994, to March 21, 2000.
[Joint Stipulation ("JS") 4.]

## II.  PRIOR PROCEEDINGS

Plaintiff initially filed a protective application for Disability
Insurance Benefits under Title II of the Social Security Act on
November 20, 1995, alleging disability since September 9, 1994.  [AR
69.]  The application was eventually denied in an administrative
decision filed on May 16, 1997. [AR 69-79.]  The Appeals Council
declined review on November 20, 1998. [AR 88-89.]

In the interim, plaintiff filed a second DIB application on
November 26, 1997. [JS 1, AR 152-54.]  After the application was
denied initially and upon reconsideration, plaintiff requested an
administrative hearing, which was held on October 14, 1999, before
Administrative Law Judge ("ALJ") Gary D. Admire.  [AR 40.]  Plaintiff
appeared with counsel, and testimony was taken from plaintiff and
third-party witness Jessie Zalazar.  [Id.]  The ALJ denied benefits in
a decision dated January 27, 2000. [AR 101-09.]  On April 17, 2000,
the Appeals Council remanded the matter for further proceedings in
light of additional evidence that the date last insured for purposes
of plaintiff's DIB eligibility had been extended, among other things.
[AR 132-33.]

An administrative hearing was subsequently held on July 25, 2001,
before ALJ Keith Varni. [AR 33.]  Plaintiff appeared with counsel and

2

1   testified. [Id.]  The ALJ denied benefits in a decision dated August

2   21, 2001. [AR 19-24.]  On July 31, 2002, the Appeals Council declined

3   review. [AR 5-6.]

4        Plaintiff filed a complaint in the district court on September

5   24, 2002 (Case No. EDCV 02-1029).   The matter was remanded for

6   further administrative proceedings pursuant to a stipulation between

7   the parties on March 25, 2005. [AR 535-36.]

8        An administrative hearing was subsequently held on April 27,

9   2006, before ALJ Varni. [AR 666-673.]  Plaintiff did not appear for

10  the hearing, although plaintiff's counsel did, and testimony was taken

11  from vocational expert Sandra Fioretti. [AR 669.]  The ALJ denied

12  benefits in a decision dated June 3, 2006. [AR 519-25.]   When the

13  Appeals Council denied review on September 18, 2006, the ALJ's

14  decision became the Commissioner's final decision.  [AR 510-12.]

15       The instant complaint was filed on November 14, 2006.  On May 29,

16  2007, defendant filed an answer and plaintiff's Administrative Record

17  ("AR").  On August 3, 2007, the parties filed their Joint Stipulation

18  ("JS") identifying matters not in dispute, issues in dispute, the

19  positions of the parties, and the relief sought by each party.  This

20  matter has been taken under submission without oral argument.

21                   **III.   STANDARD OF REVIEW**

22       Under 42 U.S.C. § 405(g), a district court may review the

23  Commissioner's decision to deny benefits.  The Commissioner's (or

24  ALJ's) findings and decision should be upheld if they are free of

25  legal error and supported by substantial evidence.  However, if the

26  court determines that a finding is based on legal error or is not

27  supported by substantial evidence in the record, the court may reject

28  the finding and set aside the decision to deny benefits.  See Aukland

                                    3

v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### IV.  DISCUSSION

#### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not

4

disabled is appropriate.
        Step three: Does the claimant's impairment or
combination of impairments meet or equal an impairment
listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
so, the claimant is automatically determined disabled.  If
not, proceed to step four.
        Step four: Is the claimant capable of performing his
past work?  If so, the claimant is not disabled.  If not,
proceed to step five.
        Step five: Does the claimant have the residual
functional capacity to perform any other work?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended

April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20

C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or

"not disabled" at any step, there is no need to complete further

steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

     Claimants have the burden of proof at steps one through four,

subject to the presumption that Social Security hearings are non-

adversarial, and to the Commissioner's affirmative duty to assist

claimants in fully developing the record even if they are represented

by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at

1288.  If this burden is met, a prima facie case of disability is

made, and the burden shifts to the Commissioner (at step five) to

prove that, considering residual functional capacity ("RFC")[1], age,

education, and work experience, a claimant can perform other work

---

[1]  Residual functional capacity measures what a claimant can
still do despite existing "exertional" (strength-related) and
"nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155
n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to
work without directly limiting strength, and include mental, sensory,
postural, manipulative, and environmental limitations.  Penny v.
Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155
n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,
765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1  which is available in significant numbers.   <u>Tackett</u>, 180 F.3d at 1098,

2  1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

3       **B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

4       Here, the ALJ found that plaintiff had not engaged in substantial

5  gainful activity during the period relevant to his DIB application

6  (step one); that plaintiff had "severe" impairments, namely his lumbar

7  spine disorder (step two); and that plaintiff did not have an

8  impairment or combination of impairments that met or equaled a

9  "listing" (step three). [AR 23.]  Plaintiff was found to have an RFC

10 for work at the medium exertional level, which would preclude his past

11 relevant work (step four). [AR 23-24.]  Based on plaintiff's age,

12 education, work experience and RFC, as reflected in Rules 203.19 and

13 203.26 of the Medical Vocational Guidelines ("Grids"), plaintiff was

14 found "not disabled" under the Social Security Act (step five). [AR

15 24.]

16      **C.   ISSUES IN DISPUTE**

17      The parties' Joint Stipulation identifies two disputed issues:

18      1.   Whether the ALJ properly evaluated the opinion of the

19           examining physician; and

20      2.   Whether the ALJ properly evaluated the opinion of the

21           treating physician.

22 [JS 3.]

23      **D.   ISSUE ONE: THE EXAMINING PHYSICIAN'S OPINION**

24      In July 1994, plaintiff sustained a herniated disc in his lower

25 back while helping co-workers carry a piece of heavy machinery. [AR

26 263.]  Treatment through physical therapy and epidural injections was

27 unsuccessful. [AR 364.]  In January 1998, plaintiff underwent a

28 complete orthopedic consultation performed by Dr. Herbert Johnson. [AR

295-300.]  Dr. Johnson recorded plaintiff's history, reviewed his
medical records and performed a physical examination before concluding
that plaintiff had "chronic low back pain." [AR 299.]  Dr. Johnson
also commented that plaintiff exhibited "quite marked pain behavior,
which precluded an adequate evaluation of the musculoskeletal system"
and that, "The patient at the present time seems to demonstrate
genuine chronic pain behavior." [AR 299, 300.]  Dr. Johnson
recommended, from a functional standpoint, that plaintiff lift less
then ten pounds frequently or occasionally, stand or walk less than
two hours in an eight-hour workday, sit for one hour without a change,
and avoid climbing, balancing, stooping, crouching, kneeling and
crawling, among other limitations. [AR 300.]   Several months after
the examination, in September 1998, plaintiff underwent a laminectomy
and open diskectomy. [AR 366.]

     In the latest administrative decision, the ALJ incorporated his
discussion of the medical evidence set out in his previous decision of
August 21, 2001. [AR 520.]  In that earlier decision, the ALJ gave
"little weight" to Dr. Johnson's opinion because the doctor chose to
discount "the virtually admitted signs of symptom exaggeration and
fully credit the claimant's subjective complaints."[2] [AR 22.]
Plaintiff argues that the ALJ's incorporated evaluation did not follow
the court's order of remand and did not include legally sufficient
reasons to discount Dr. Johnson's opinion. [JS 5.]

     Ninth Circuit cases distinguish among the opinions of three types

_____

[2]  As evidence of symptom exaggeration, the administrative
decision cited an August 1998 examination of plaintiff revealing
positive Waddell's signs, "which are indicative of at least symptom
magnification." [AR 21, 339.]  The decision also cited an April 1999
pain management evaluation that noted some exaggeration of pain
symptoms. [AR 22, 427.]

1  of physicians: those who treat the claimant (treating physicians),

2  those who examine but do not treat the claimant (examining or

3  consultative physicians), and those who neither examine nor treat the

4  claimant (non-examining physicians).  Lester v. Chater, 81 F.3d 821,

5  830 (9th Cir. 1995).  The opinion of a treating physician is given

6  deference because he is employed to cure and has a greater opportunity

7  to know and observe the patient as an individual.  Sprague v. Bowen,

8  812 F.2d 1226, 1230 (9th Cir. 1987).  The opinion of an examining

9  physician is, in turn, entitled to greater weight than the opinion of

10  a non-examining physician.  Lester, 81 F.3d at 830.  As is the case

11  with the opinion of a treating physician, the ALJ must provide "clear

12  and convincing" reasons for rejecting the uncontradicted opinion of an

13  examining physician, and specific and legitimate reasons supported by

14  substantial evidence in the record to reject the contradicted opinion

15  of an examining physician.  Id. at 830-31.

16      Here, the rationale provided to give little weight to Dr.

17  Johnson's opinion – that he ignored signs plaintiff was engaging in

18  symptom magnification and fully credited plaintiff's subjective

19  complaints – was not a specific and legitimate reason supported by

20  substantial evidence.  Dr. Johnson's evaluation does not indicate that

21  he ignored the possibility of symptom magnification by plaintiff; the

22  evaluation indicates that he gave full consideration to the behavioral

23  aspect of plaintiff's pain symptoms and concluded that the behavior

24  was genuine.  Moreover, Dr. Johnson's opinion was not grounded on

25  plaintiff's subjective complaints, but on a comprehensive consultation

26  including a medical history, a review of the medical records and a

27  complete physical examination.  Under these circumstances, the

28  rejection of Dr. Johnson's opinion, without an explanation as to why

1    it was less persuasive than other opinions in the record containing

2    fleeting references to possible symptom magnification, was not

3    legitimate under the Ninth Circuit's standard.   See Lester, 81 F.3d at

4    830-31.

5         **E.   ISSUE TWO: THE TREATING PHYSICIAN'S OPINION**

6         Plaintiff's treating physician during this period was Dr. Daniel

7    Franco. [AR 353.]   In August 1999, approximately one year after

8    plaintiff's back surgery, Dr. Franco completed a Physical Capacities

9    Evaluation recommending that plaintiff be limited to lifting or

10   carrying five pounds occasionally; sitting, standing or walking for

11   one hour during an eight-hour workday; and no bending, squatting,

12   crawling, climbing or reaching. [Id.]   Concurrently, Dr. Franco wrote

13   a treatment note stating that plaintiff continued to have severe low

14   back pain after the surgery and was in a "depressed mood" and "mildly

15   stressed" about it. [AR 463.]   Dr. Franco also observed that plaintiff

16   had five out of five possible Waddell's criteria. [Id.]   Dr. Franco

17   concluded, consistent with his physical capacities evaluation, that

18   plaintiff "is still disabled."[3] [Id.]

19        The ALJ gave "little or no weight" to Dr. Franco's opinion,

20   citing the following reasons: (1) the repeated findings of symptom

21   exaggeration by better qualified examining medical sources; (2) the

22   lack of evidence of any significant medically determinable mental

23   impairment; and (3) the inconsistency of the objective findings and

24   the reported symptoms. [AR 22.]   Plaintiff contends the ALJ failed to

25

26        [3]  Subsequently, in July 2001, after plaintiff resumed
     substantial gainful activity, Dr. Franco completed another Physical
27   Capacities Evaluation which stated, as did the earlier evaluation,
     that plaintiff could sit, stand or walk for one hour during an eight-
28   hour workday; occasionally lift or carry five pounds; and never bend,
     squat, crawl, climb or reach. [AR 497.]

                                     9

1    provide specific and legitimate reasons to reject Dr. Franco's

2    opinion. [JS 13.]

3          First, it is evident from Dr. Franco's August 1998 treatment note

4    that he did not ignore signs of possible symptom exaggeration by

5    plaintiff; the note indicates that the doctor took into account the

6    positive Waddell's signs before concluding that plaintiff was still

7    disabled.[4]  Second, as for the lack of evidence of any significant

8    medically determinable mental impairment, Dr. Franco's opinion cannot

9    reasonably be construed to allege a significant mental impairment,

10   only that plaintiff felt "depressed" and "slightly stressed" about his

11   pain.  Third, as for the purported inconsistency of the objective

12   findings and the symptoms reported by Dr. Franco, this general finding

13   is not sufficiently specific under the Ninth Circuit standard for the

14   evaluation of treating medical evidence.  See Regenitter v.

15   Commissioner of the Social Security Administration, 166 F.3d 1294,

16   1299 (9th Cir. 1999)(quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th

17   Cir. 1988)) ("To say that medical opinions are not supported by

18   sufficient objective findings or are contrary to the preponderant

19   conclusions mandated by the objective findings does not achieve the

20   level of specificity our prior cases have required").  Under these

21

22        [4]  Moreover, the purported evidence of plaintiff's symptom
     exaggeration cited in the decision is neither conclusive nor
23   substantial.  See note 2, supra.  Despite indications of positive
     Waddell's signs, no physician explained the significance of the signs
24   or interpreted them to mean that plaintiff was malingering or
     magnifying his symptoms.  In addition, the single record that
25   commented that plaintiff "appeared" to show symptom exaggeration still
     delineated objective physical findings justifying several treatment
26   recommendations, including an increase in painkiller dosage, nerve
     root blocks, a neuropsychology referral, physical therapy, and a TENS
27   unit. [AR 429.]  The issue of symptom magnification was not as central
     to this case as the administrative decision appears to suggest.
28

                                    10

1  circumstances, the evaluation of the treating medical evidence was not

2  supported by specific and legitimate reasons based on substantial

3  evidence in the record.   See Lester, 81 F.3d at 830.

4      **F.   REMAND FOR PAYMENT OF BENEFITS**

5      The decision whether to remand for further proceedings is within

6  the discretion of the district court.   Harman v. Apfel, 211 F.3d 1172,

7  1175-1178 (9th Cir. 2000).   Where there are outstanding issues that

8  must be resolved before a determination can be made, and it is not

9  clear from the record that the ALJ would be required to find the

10  claimant disabled if all the evidence were properly evaluated, remand

11  is appropriate.   Id. at 1179.   However, where no useful purpose would

12  be served by further proceedings, or where the record has been fully

13  developed, it is appropriate to exercise this discretion to direct an

14  immediate award of benefits.   Id. (decision whether to remand for

15  further proceedings turns upon their likely utility).

16      In plaintiff's case, as discussed above, the administrative

17  decision did not include specific and legitimate reasons supported by

18  substantial evidence in the record to reject the opinions of Dr.

19  Johnson and Dr. Franco.   Accordingly, their opinions are credited as

20  true.   Harman, 211 F.3d at 1178; Lester, 81 F.3d at 834.   The

21  vocational expert testified that a person with the limitations

22  described in Dr. Johnson's opinion (the more conservative of the two

23  opinions) could not perform plaintiff's past relevant work or any

24  other work. [AR 671-72.]   When the credited opinions are taken

25  together with the vocational evidence, the record clearly indicates

26  that plaintiff must be found disabled and entitled to benefits for the

27

28

closed period between May 17, 1997, to March 21, 2000.[5]  Accordingly,
no useful purpose would be served by further proceedings, and an order
directing an immediate award of benefits is appropriate.

**V.  ORDERS**

Accordingly, **IT IS ORDERED** that:

1.    The decision of the Commissioner is **REVERSED**.

2.    This action is **REMANDED** to defendant for payment of
benefits.

3.    The Clerk of the Court shall serve this Decision and Order
and the Judgment herein on all parties or counsel.

DATED:  September 28, 2007

_____/S/  _____
CARLA M. WOEHRLE
United States Magistrate Judge

---

[5]  Plaintiff seeks benefits for the closed period between
September 9, 1994, to March 21, 2000. [JS 4.]  However, the record
indicates that an ALJ decision denying benefits issued on May 16,
1997, is administratively final and has not been appealed or reopened.
[AR 69-79.]  Because this decision is not subject to judicial review,
benefits for the period prior to the date of the decision cannot be
awarded.  See Califano v. Sanders, 430 U.S. 99, 108, 97 S. Ct. 980, 51
L. Ed. 2d 192 (1977).